AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JULIO FLAVIO SANCHEZ (aka "Moreno"), OMAR RODRIGUEZ BARRIOS, RODRIGO TORO, DARA EDMOND CHHAY, and ALFONSO SILVA | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>ED17-0291M |

FILED
CLERK, U.S. DISTRICT COURT
JUN 16 2017
CENTRAL DISTRICT OF CALIFORNIA
BY

Complaint for violation of Title 21, United States Code, Section 846

| NAME OF MAGISTRATE JUDGE<br>HONORABLE SHERI PYM | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Riverside, California |
|---|---|---|
| DATE OF OFFENSE<br>June 14, 2017 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 846]

On or about June 14, 2017, in Los Angeles County, within the Central District of California, defendants JULIO FLAVIO SANCHEZ, also known as "Moreno," Omar Rodriguez BARRIOS ("BARRIOS"), Rodrigo TORO ("TORO"), Dara Edmond CHHAY ("CHHAY"), and Alfonso SILVA ("SILVA"), and others known and unknown, conspired and agreed with one another to knowingly and intentionally distribute at least 5 one kilograms of a mixture or substance containing a detectable amount of cocaine. 

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**Andrew Sharp** /s/ |
|---|---|
| | OFFICIAL TITLE<br>Special Agent – FBI |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)]<br>SHERI PYM | DATE<br>June 16, 2017 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

SAUSA Stacey R. Fernandez x3152    REC: Detention

## AFFIDAVIT

I, Andrew Sharp, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of an application for a warrant authorizing a criminal complaint against Julio Flavio SANCHEZ ("SANCHEZ"), Omar Rodriguez BARRIOS ("BARRIOS"), Rodrigo TORO ("TORO"), Dara Edmond CHHAY ("CHHAY"), and Alfonso SILVA ("SILVA") for a violation of 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute controlled substances).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND INFORMATION FOR SPECIAL AGENT SHARP

3. I am a Special Agent ("SA") with Federal Bureau of Investigation ("FBI"), and have been so employed since November, 2005. I am currently assigned to the FBI, Los Angeles Field Division, Riverside Resident Agency and I am also a member of the Inland Empire Hybrid Drug Taskforce ("IEHTF"). This task force consists of experienced narcotics investigators from the FBI, Drug Enforcement Administration ("DEA"), Homeland Security

1

Investigations, Fontana Police Department, and the San Bernardino County Sheriff's Department ("SBSD").

4. I have received 18 weeks (approximately 800 hours) of instruction in the fundamentals of law, ethics, behavioral science, interviewing, report writing, firearms, surveillance, defensive tactics, and case management at the FBI Academy in Quantico, Virginia. Through the course of my employment with the FBI, I have participated in a variety of violent crime investigations, including bank robbery, kidnapping, and murder. I also have participated in narcotics investigations into criminal street gangs that involved crimes such as murder, attempted murder, extortion, assault with a deadly weapon, and the unlawful importation, possession, and distribution of controlled substances.

5. I have received instructions in the identification, collection, and preservation of evidence, photography, latent print collection, and crime-scene investigations. I have completed thousands of hours of criminal investigations, including compiling information, interviewing victims, witnesses, and suspects, and collecting evidence to support the filing of criminal complaints and search warrants, including warrants for GPS tracking devices on cars.

6. During the course of my employment I have been involved in drug trafficking and money laundering investigations. I have also received training in the investigation of drug trafficking organizations and have been provided with information concerning the normal patters and

procedures through which drug trafficking organizations conduct their illegal business. I have also had discussions with federal, state, and local law enforcement officers with substantial experience in the investigation of drug trafficking organizations.

7. Based on my training, experience, and participation in this and other narcotics trafficking investigations and upon my consultation with other experienced law enforcement officers, I know that individuals involved with drug trafficking and distribution commonly use vehicles to further their distribution operations, such as using vehicles to meet with narcotics buyers, to transport narcotics to and from narcotics stash locations, to conduct narcotics and cash exchanges, to mail narcotics through various parcel delivery services, and to transport narcotics proceeds from narcotics transaction locations to stash locations and/or banks.

### III. SUMMARY OF PROBABLE CAUSE

8. In February 2017 and March 2017, a confidential informant ("CI-1") working with the FBI conducted two controlled methamphetamine buys with an individual later identified as JULIO FLAVIO SANCHEZ ("SANCHEZ").[1] On June 14, 2017, SANCHEZ brokered a cocaine deal with CIs and also sold one kilogram of cocaine to TORO.

---

[1] CI-1 is currently on pre-trial supervision after pleading guilty to conspiracy to 21 U.S.C. §§ 841, 846. CI-1 has convictions for misdemeanor vehicle theft, felony vehicle theft, reckless driving, and driving with a suspended license. CI-1 has participated in two controlled drug purchases, and his/her information has been credible.

9. On June 14, 2017, the following occurred:

   a. BARRIOS met with SANCHEZ and the CIs while they discussed the 20 kilogram cocaine sale. BARRIOS also sold one kilogram of cocaine to TORO, and met with SILVA.

   b. TORO bought 20 kilograms of cocaine from BARRIOS and SANCHEZ and drove to CHHAY's house.

   c. CHHAY gave consent to search his house and officers found over 40 pounds of marijuana and 6 ounces of cocaine.

   d. SILVA, who had met with BARRIOS earlier in the day and appeared to reach into the back of BARRIOS's car, gave consent to search his residence. Officers found a pay/owe book, a large amount of cash, and a number of gift bags, including a Tory Burch bag. After BARRIOS was arrested officers found six kilograms of cocaine in a Tory Burch bag in BARRIOS's car.

## IV. STATEMENT OF PROBABLE CAUSE

10. The following information is based on my training and experience, my review of reports, surveillance footage, and draft translated transcripts, my discussion with other law enforcement officers, and my own participation in the investigation.

**A. Investigation of SANCHEZ and Controlled Buys**

11. On or about January 26, 2017, CI-1 told me that, in late 2016, CI-1 met a person CI-1 recognized as a drug trafficker and knew only as "Moreno" while in a bar in Lakewood, California. Over the course of this investigation and using California Department of Motor Vehicles records and law

enforcement databases, the Inland Empire Hybrid Task Force ("IEHTF") learned that "Moreno" is JULIO FLAVIO SANCHEZ ("SANCHEZ"). CI-1 knew that SANCHEZ was involved in the distribution of cocaine and methamphetamine. During a conversation at the bar, CI-1 and SANCHEZ exchanged telephone numbers.[2]

12. On February 27, 2017, the IEHTF conducted a controlled buy during which CI-1 bought approximately one pound of methamphetamine from SANCHEZ for $2,300. SANCHEZ arrived at the pre-determined meeting location in a silver Chevrolet S-10 pickup truck ("SANCHEZ's truck"). The buy was recorded with audio and video equipment and monitored by law enforcement.[3]

13. On March 24, 2017, the IEHTF conducted a controlled buy during which CI-1 and CI-2 bought approximately two pounds of methamphetamine from SANCHEZ for $4,700.[4] The buy was

---

[2] All conversations between the CIs and SANCHEZ were in Spanish.

[3] On March 22, 2017, the Honorable Sheri Pym, United States Magistrate Judge, signed a warrant and order authorizing the installation and use of a tracking device on SANCHEZ's truck ("the SANCHEZ tracker warrant"). On May 5, 2017, the Honorable Sheri Pym, United States Magistrate Judge, signed an order extending the SANCHEZ tracker warrant an additional 45 days.

[4] CI-2 has been an informant with the San Bernardino County Sheriff's Department since at least 2002 and has been responsible for the seizure of more than one million dollars and over 400 pounds of cocaine, methamphetamine, and heroin combined. CI-2 has convictions for misdemeanor carrying a concealed weapon, misdemeanor reckless driving, misdemeanor spousal battery, misdemeanor driving without a license, misdemeanor DUI, felony DUI, felony transportation of controlled substances, felony possession of a controlled substance for sale, felony possession of firearm, and Assault with a Deadly Weapon/Not Firearm. CI-2's most recent conviction was in 2007. CI-2 is currently working for immigration benefits.

5

recorded with audio and video equipment and monitored by law enforcement.

14.  I believe that SANCHEZ is involved in a drug trafficking organization.

**B.  Attempted Cocaine Sale between SANCHEZ and Another Target FNU LNU**

15.  On April 11, 2017, CI-1 called SANCHEZ and told him that CI-1 had been contacted by a potential cocaine buyer. SANCHEZ responded that he would call CI-1 back with a price for a kilogram of cocaine.

16.  On April 13, 2017, CI-1 called SANCHEZ and asked SANCHEZ the price for a kilogram of cocaine. SANCHEZ told CI-1 that he was waiting for his uncle to return and would call CI-1 with the price. Based on my training and experience and the context of the conversation, I believe that SANCHEZ's uncle was in Mexico and that SANCHEZ needed to confirm the price of the cocaine with his uncle.

17.  On April 26, 2017, CI-1 placed another recorded call to SANCHEZ and again asked for the price for a kilogram of cocaine. SANCHEZ told CI-1 that he could sell CI-1 a kilogram of cocaine for $20,800. CI-1 told SANCHEZ that CI-1's customer wanted to purchase approximately six kilograms, and SANCHEZ agreed to the sale.

18.  On May 22, 2017, CI-1 called SANCHEZ and told him that CI-1 needed six kilograms of cocaine later in the week. CI-1 confirmed with SANCHEZ that the price had not changed, and

SANCHEZ asked that CI-1 call SANCHEZ a day before CI-1 was ready to purchase the cocaine.

19. On May 22, 2017, CI-1 called another target, FNU LNU, who had asked CI-1 for cocaine. CI-1 told FNU LNU that CI-1 would be receiving a shipment of cocaine and that, when the cocaine arrived, CI-1 and FNU LNU could meet in person. FNU LNU agreed to meet with CI-1 at Ontario Mills Mall, but because he could not arrive until late in the evening the operation was cancelled.

    C.    **SANCHEZ and BARRIOS Broker Cocaine Sale on June 14, 2017**

20. On June 14, 2017, the IEHTF conducted a controlled buy during which, as explained below, officers recovered approximately seven kilograms of cocaine. IEHTF surveillance teams set up surveillance at an In-N-Out Burger on Firestone Boulevard in South Gate, California, where previous controlled buys with SANCHEZ took place, and at SANCHEZ's truck, which was parked on South Gate Avenue in South Gate, California. Unless otherwise noted, IEHTF surveillance saw everything described as it happened, and the CIs were outfitted with audio and video recording equipment.[5]

    a. On June 14, 2017, IEHTF members put fake U.S. currency inside a hidden compartment located behind the backseat of CI-2's car.

---

[5] Prior to the buy, IEHTF members searched CI-1 and CI-2 and their vehicle for contraband with negative results.

  b. At approximately 2:13 p.m., CI-1 called SANCHEZ, and they agreed to meet at the In-N-Out Burger on Firestone Boulevard in South Gate, California.[6] Shortly thereafter SANCHEZ's truck left South Gate Avenue, arrived at the In-N-Out Burger, parked, and SANCHEZ walked into the restaurant.

  c. At approximately 2:48 p.m., CI-1 and CI-2 arrived at the In-N-Out and entered the restaurant. CI-1 and CI-2 sat at a table with SANCHEZ, and CI-2 told SANCHEZ that the CIs needed 20 kilograms of cocaine. SANCHEZ then made a telephone call to an unknown person and asked that person how long it would be until he or she arrived.

  d. At approximately 2:54 p.m., CI-2 told me that an unknown Hispanic male wearing a red and white striped polo shirt, later identified as Omar Rodriguez BARRIOS ("BARRIOS"), entered the In-N-Out and joined CI-1, CI-2, and SANCHEZ at their table. SANCHEZ explained to BARRIOS that the CIs needed 20 kilograms of cocaine, 10 of it that same day. BARRIOS made several telephone calls that went unanswered, and SANCHEZ made a call and asked the unknown person if s/he could meet SANCHEZ at the In-N-Out. After the phone call, SANCHEZ explained to the CIs that he was going to conduct a one kilogram cocaine transaction with another person, but the person did not want to drive to the In-N-Out. SANCHEZ then asked BARRIOS to go get the kilogram of cocaine.

---

[6] All phone calls were recorded.

   e. At approximately 3:21 p.m., BARRIOS exited the restaurant, got into a white Honda Accord bearing California license plate 7UJZ612 ("BARRIOS's Honda"), and departed the area.[7] While CI-1 and SANCHEZ remained inside the restaurant, CI-2 exited the restaurant and told me that BARRIOS was leaving to retrieve the one kilogram cocaine.

   f. At approximately 3:29 p.m., CI-1, CI-2, and SANCHEZ left the restaurant and walked to CI-2's vehicle. As they were walking out, CI-1 asked SANCHEZ the price for each kilogram of cocaine. SANCHEZ replied that the price was the same as discussed in previous conversations. Based on the previous conversations, CI-1 believed the price to be $20,800. SANCHEZ returned to his truck, parked it in a new parking space, and remained seated in the truck. CI-1 and CI-2 returned to CI-2's vehicle and followed me back to the briefing location.

  **D.** **BARRIOS and SANCHEZ Sell One Kilogram of Cocaine to TORO; Marijuana and Cocaine Found in CHHAY's House**

 21. At approximately 3:28 p.m., BARRIOS arrived in BARRIOS's Honda at the same apartment complex on California Avenue in Lynwood, California where BARRIOS's Honda is registered, and exited the vehicle empty handed. Shortly thereafter, he returned to BARRIOS's Honda carrying a grey and blue backpack and returned to the In-N-Out Burger restaurant.

 22. At approximately 3:38 p.m., SANCHEZ got into the front passenger seat of BARRIOS's Honda, which then left the area and

---

[7] A California Department of Motor Vehicles database inquiry subsequently revealed the White Honda Accord bearing California license plate 7UJZ612 was registered to Jose Coronado Rodriguez, at an apartment on California Avenue in Lynwood, California

9

was followed to the vicinity of 5631 Leeds Street, South Gate, California, where it parked curbside.

    a. At approximately 3:49 p.m., a silver Lexus bearing California license plate 7YAW198 ("the Lexus") arrived at the same location.[8] SANCHEZ exited the BARRIOS's Honda, put the grey and blue backpack into the trunk of the Lexus, closed the trunk, and returned to the passenger seat of BARRIOS's Honda. Both cars departed in different directions, and BARRIOS's Honda returned to the In-N-Out Burger.

    b. At approximately 4:17 p.m., SANCHEZ exited BARRIOS's Honda and returned to his truck. SANCHEZ remained in his truck and BARRIOS departed the location in BARRIOS's Honda.

23. After it departed the Leeds Street location, surveillance units followed the Lexus.

    a. At approximately 4:15 p.m., the Lexus arrived at a house on Bellflower Boulevard in Lakewood. The driver of the Lexus, a Hispanic male wearing a white T-shirt, later identified as Rodrigo TORO ("TORO"), and the passenger, later identified as Edward Fausto GARCIA ("GARCIA"), exited the Lexus empty handed. TORO and GARCIA walked to the porch area of the residence listed above and met with two male adults.

    b. At approximately 4:48 p.m., one of the male adults, later identified as Dara Edmond CHHAY ("CHHAY"), walked to the Lexus and was in the process of moving the Lexus into the

---

[8] A California Department of Motor Vehicles database inquiry subsequently revealed the silver Lexus bearing California license plate 7YAW918 was registered to Erik Antonio Valdez, on Hope Street in Huntington Park, California

driveway of the Bellflower address when IEHTF surveillance units approached all four individuals. CHHAY told law enforcement investigators that TORO was paying him to detail the Lexus. TORO told investigators that he recently purchased the Lexus, but had not registered it in his name. TORO gave investigators consent to search the Lexus, and IEHTF members found the grey and blue backpack, containing approximately one kilogram of cocaine, in the trunk. TORO claimed the kilogram was his and was arrested for Possession for Sale and Transport of Cocaine in violation of California Health and Safety Code Sections 11351 and 11352. GARCIA was allowed to leave the location.

    c. CHHAY, his father Dara CHHAY, and his mother Yanira M. Rodriguez gave IEHTF members consent to search the Bellflower residence. While waiting for a San Bernardino County Sheriff's Department K-9 to arrive at the residence, CHHAY told IEHTF members that his California driver's license was in his bedroom. TFO Dominic Vaca escorted CHHAY to his bedroom where TFO Vaca found two large bundles of marijuana on the floor next to his bed.

    d. At approximately 5:50 p.m., a San Bernardino County Sheriff's Department K-9 investigator arrived at the Bellflower address. The K-9 conducted a sniff search of the residence. The K-9 alerted to three locations in CHHAY's bedroom: the two large bundles of marijuana weighing approximately 45.4 pounds, a white bucket containing approximately 14.78 ounces of marijuana, and a dresser. In the dresser, IEHTF members found a Yuban brand coffee can with a

false bottom; located inside the false bottom section was approximately 6.1 ounces of cocaine. CHHAY was arrested for Possession of a Controlled Substance for Sale, Transportation of Cocaine, and Possession of Marijuana for Sale, in violation of California Health and Safety Code Sections 11351, 11352, and 11360.

e. After waiving his Miranda rights, CHHAY told IEHTF members that he received the marijuana from a male known as "JC." JC gave CHHAY the marijuana in exchange for a puppy. CHHAY also said that he purchased the cocaine for approximately $700.

**E. BARRIOS Meets SILVA at SILVA's House on Liberty Boulevard and IEHTF Finds Cash, a Pay/Owe Book, and Gift Bags**

24. As previously stated, at approximately 4:17 p.m., after picking up the blue and gray backpack from the California Avenue apartment and dropping it off with the Lexus, BARRIOS's Honda left the In-N-Out Burger.

25. At approximately 4:25 p.m., BARRIOS's Honda arrived at a house on Liberty Boulevard in South Gate, California, pulled into the driveway, and BARRIOS exited the car. Surveillance units saw that the trunk of BARRIOS's Honda was open. A Hispanic male wearing a black polo shirt and blue jeans, later identified as Alfonso SILVA ("SILVA"), met with BARRIOS, reached into the trunk of BARRIOS's Honda, and immediately closed the trunk.

26. At approximately 4:32 p.m., SILVA and BARRIOS shook hands and BARRIOS's Honda left the location. IEHTF members continued to surveillance of the house on Liberty Boulevard.

27. SILVA left the Liberty Boulevard location in a black car driven by a Hispanic female; surveillance units did not follow SILVA. A short time afterward, SILVA returned to the Liberty Boulevard address in the same vehicle driven by the Hispanic female.

28. At approximately 5:32 p.m., IEHTF members approached SILVA at the Liberty Boulevard address and identified him as the same individual who had reached into BARRIOS's trunk earlier in the day. The residence is a single-family home with the actual house subdivided into two residences. SILVA told IEHTF members that he lived in the garage, which was converted into a separate dwelling, with his wife and children. SILVA said that his wife and children were currently in Mexico.

29. SILVA and the two other residents present, Enriqueta Silva and Eduardo Cruz, all consented to a search of the entire property, including both residences and the garage. During the search of the garage, law enforcement personnel located a large sum of U.S. currency inside a shoe box that was in the children's bedroom. Behind a picture mounted on the bathroom wall, investigators found a brown pay/owe book. Behind the converted garage was a laundry room. Inside the laundry room, investigators located a Nissan key that was affixed to the back of a picture of the Virgin Mary. Investigators also located a large quantity of gift bags, including a "Tory Burch" gift bag.

30. Parked directly in front of the house was a silver Nissan Juke bearing California license plate 7ULL233. A California Department of Motor Vehicles database inquiry revealed the silver Nissan Juke was registered to Eduardo a. Gastelum Velarde on Hill Road in Vacaville, California.

31. Investigators took the Nissan key that was found in the laundry room and pressed the keyless entry buttons located on it. The Nissan Juke's lights blinked when the buttons were pressed. A San Bernardino County Sheriff's Department K-9 investigator arrived at the Liberty Boulevard address. The K-9 conducted a sniff search of the Nissan Juke and alerted to the vehicle several times. A subsequent search of the vehicle revealed a hidden compartment located under the driver's and passenger's seats. The hidden compartment on the driver's side of the vehicle contained a brown shoebox with a large sum of U.S. currency inside. The passenger side contained an additional large bundle of U.S. currency.

32. SILVA was placed under arrest for Possession of Illicit Proceeds in violation of California Health and Safety Code Section 11370.6. After waiving his Miranda rights, SILVA told investigators that the money found in his children's bedroom was the proceeds from the recent sale of a vehicle. SILVA denied knowledge of the contents of the Nissan Juke or why the key to the vehicle was hidden in the laundry room. SILVA also denied knowledge of the pay/owe book found in the bathroom. SILVA said that BARRIOS was his wife's cousin.

### F. Arrest of SANCHEZ and BARRIOS

33. At approximately 4:13 p.m., while CI-1 and CI-2 were being debriefed, CI-1 received an incoming call from SANCHEZ. SANCHEZ told CI-1 that the cocaine was going to be delivered to the In-N-Out soon.

34. As previously stated, at approximately 4:32 p.m., after BARRIOS had dropped of the blue and gray backpack with the Lexus and arrived at the Liberty Boulevard location where SILVA reached into the truck of BARRIOS's Honda, BARRIOS's Honda left the Liberty Boulevard address and arrived at the In-N-Out Burger shortly thereafter.

35. At approximately 4:36 p.m., SANCHEZ called CI-1 and told him to "take off."

36. At approximately 4:38 p.m., IEHTF members approached BARRIOS and SANCHEZ at the In-N-Out Burger. As law enforcement were approaching, BARRIOS fled the scene. Investigators followed BARRIOS and saw him throw an object. BARRIOS was apprehended a short time afterward and taken into custody. The object was located and was determined to be the key for BARRIOS's Honda. SANCHEZ was taken into custody without incident.

37. Investigators searched BARRIOS's Honda and found a "Tory Burch" gift bag inside the trunk. Upon opening the gift bag, investigators found approximately six kilograms of cocaine.

38. While obtaining routine booking information, BARRIOS initially informed investigators that he lived in Norwalk, California. Investigators told BARRIOS that they thought he

15

lived at the California Avenue address. BARRIOS then said that he lives at the California Avenue address with his wife.

39. SANCHEZ told investigators that the address listed on his truck's registration - on Hunt Avenue in South Gate - belongs to his aunt. SANCHEZ said that he stays at both the Hunt Avenue address and an address on South Gate Avenue in South Gate.

40. SANCHEZ and BARRIOS were arrested for Possession for Sale and Transportation of Cocaine in violation of California Health and Safety Code Sections 11351 and 11352, Possession for Sale and Transportation of Cocaine.

//
//

## V. CONCLUSION

41. For all the reasons described above, there is probable cause to believe that Julio Flavio SANCHEZ ("SANCHEZ"), Omar Rodriguez BARRIOS ("BARRIOS"), Rodrigo TORO ("TORO"), Dara Edmond CHHAY ("CHHAY"), and Alfonso SILVA ("SILVA") have committed a violation of 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute controlled substances).

/s/
_____
Andrew Sharp, Special Agent
Federal Bureau of
Investigation

Subscribed to and sworn before me
this 6th day of June, 2017.

SHERI PYM
_____
HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE